The Honorable Thomas S. Zilly

———— FILED   ———— ENTERED
———— LODGED   ———— RECEIVED

**MAR 20 2017**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY

# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>CHRIS YOUNG YOO,<br><br>　　　　　Defendant. | NO.  CR17-00075TSZ<br><br>**PLEA AGREEMENT** |

The United States of America, by and through Annette L. Hayes, United States Attorney for the Western District of Washington, and Seth Wilkinson, Assistant United States Attorney, Defendant, CHRIS YOUNG YOO, and his attorney, Michelle Peterson, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

1.　　**Waiver of Indictment**.  Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to charges brought by the United States Attorney in an Information.

2.　　**The Charges.**  Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and to enter pleas of guilty to the charges of Wire Fraud in violation of Title 18, United States Code, Section 1343, as charged in Count 1 of the Information; and False Statement to the United States in violation of Title 18, United States Code, Section 1001, as charged in Count 2 of the Information.

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    By entering these guilty pleas, Defendant hereby waives all objections to the form

2 of the charging document. Defendant further understands that before entering his pleas

3 of guilty, he will be placed under oath. Any statement given by Defendant under oath

4 may be used by the United States in a prosecution for perjury or false statement.

5    **3.    Elements of the Offenses.**

6    The elements of the offense of Wire Fraud in violation of Title 18, United States

7 Code, Section 1343, are as follow:

8    First, the defendant knowingly devised or participated in a scheme or plan

9    to defraud, or a scheme or plan for obtaining money or property by means
     of false or fraudulent pretenses, representations or promises;

10

11    Second, the statements made or facts omitted as part of the scheme were
      material; that is, they had a natural tendency to influence, or were capable

12    of influencing, a person to part with money or property;

13    Third, the defendant acted with the intent to defraud, that is, with the intent

14    to deceive or cheat; and

15    Fourth, the defendant used, or caused to be used, the interstate wires to
      carry out or attempt to carry out an essential part of the scheme.

16

17    The elements of the offense of False Statement to the United States in violation of

18 Title 18, United States Code, Section 1001, are as follow:

19    First, the defendant made a false statement in a matter within the
      jurisdiction of an agency of the United States government;

20

21    Second, the defendant acted with knowledge that the statement was untrue
      and that his conduct was, in a general sense, unlawful; and

22

23    Third, the statement was material to the activities or decisions of the United
      States government.

24

25    **4.    The Penalties.** Defendant understands that the statutory penalties for the

26 offense of Wire Fraud, as charged in Count 1, are as follow: imprisonment for up to

27 twenty years, a fine of up to two hundred fifty thousand dollars, a period of supervision

following release from prison of up to three years, and a one-hundred-dollar penalty

28 assessment. If Defendant receives a sentence of probation, the probationary period could

PLEA AGREEMENT-YOO - 2
(CR 17-00075TSZ)

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    be up to five years.  Defendant agrees that the special assessment shall be paid at or

2    before the time of sentencing.

3        Defendant understands that the statutory penalties for the offense of False

4    Statement to the United States, as charged in Count 2, are as follow:  imprisonment for up

5    to five years, a fine of up to two hundred fifty thousand dollars, a period of supervision

6    following release from prison of up to three years, and a one-hundred-dollar penalty

7    assessment.  If Defendant receives a sentence of probation, the probationary period could

8    be up to five years.  Defendant agrees that the special assessment shall be paid at or

9    before the time of sentencing.

10       Defendant understands that supervised release is a period of time following

11   imprisonment during which he will be subject to certain restrictions and requirements.

12   Defendant further understands that if supervised release is imposed and he violates one or

13   more of its conditions, Defendant could be returned to prison for all or part of the term of

14   supervised release that was originally imposed.  This could result in Defendant serving a

15   total term of imprisonment greater than the statutory maximum stated above.

16       Defendant agrees that any monetary penalty the Court imposes, including the

17   special assessment, fine, costs, or restitution, is due and payable immediately and further

18   agrees to submit a completed Financial Statement of Debtor form as requested by the

19   United States Attorney's Office.

20       **5.    Rights Waived by Pleading Guilty.**  Defendant understands that by

21   pleading guilty, he knowingly and voluntarily waives the following rights:

22           a.    The right to plead not guilty and to persist in a plea of not guilty;

23           b.    The right to a speedy and public trial before a jury of his peers;

24           c.    The right to the effective assistance of counsel at trial, including, if

25   Defendant could not afford an attorney, the right to have the Court appoint one for him;

26           d.    The right to be presumed innocent until guilt has been established

27   beyond a reasonable doubt at trial;

28

PLEA AGREEMENT-YOO - 3
(CR 17-00075TSZ)

1    e. The right to confront and cross-examine witnesses against Defendant

2 at trial;

3    f. The right to compel or subpoena witnesses to appear on his behalf at

4 trial;

5    g. The right to testify or to remain silent at trial, at which trial such

6 silence could not be used against Defendant; and

7    h. The right to appeal a finding of guilt or any pretrial rulings.

8  **6.** **United States Sentencing Guidelines.**  Defendant understands and

9 acknowledges that, at sentencing, the Court must consider the sentencing range

10 calculated under the United States Sentencing Guidelines, together with the other factors

11 set forth in Title 18, United States Code, Section 3553(a), including:  (1) the nature and

12 circumstances of the offense; (2) the history and characteristics of the defendant; (3) the

13 need for the sentence to reflect the seriousness of the offense, to promote respect for the

14 law, and to provide just punishment for the offense; (4) the need for the sentence to

15 afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect

16 the public from further crimes of the defendant; (6) the need to provide the defendant

17 with educational and vocational training, medical care, or other correctional treatment in

18 the most effective manner; (7) the kinds of sentences available; (8) the need to provide

19 restitution to victims; and (9) the need to avoid unwarranted sentence disparity among

20 defendants involved in similar conduct who have similar records.  Accordingly,

21 Defendant understands and acknowledges that:

22    a. The Court will determine his applicable Sentencing Guidelines range

23 at the time of sentencing;

24    b. After consideration of the Sentencing Guidelines and the factors in

25 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the

26 maximum term authorized by law;

27    c. The Court is not bound by any recommendation regarding the

28 sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines

PLEA AGREEMENT-YOO - 4
(CR 17-00075TSZ)

1  range offered by the parties or the United States Probation Department, or by any

2  stipulations or agreements between the parties in this Plea Agreement; and

3       d.    Defendant may not withdraw a guilty plea solely because of the

4  sentence imposed by the Court.

5       **7.    Sentencing Recommendations**. The parties agree to jointly recommend

6  that defendant serve a custodial sentence of eighty (80) months of imprisonment.

7  Defendant understands that these recommendations are not binding on the Court.

8       **8.    Ultimate Sentence**. Defendant acknowledges that no one has promised or

9  guaranteed what sentence the Court will impose.

10      **9.    Sentencing Factors.** The parties agree that the 2014 Sentencing

11  Guidelines apply to this case because the offense of conviction was committed before

12  November 1, 2015 and the offense level would be higher under current guidelines. The

13  parties further agree that the following provisions of those guidelines apply:

14       a.    A base offense level of 7, pursuant to USSG § 2B1.1(a)(1);

15       b.    An 18-point enhancement pursuant to USSG § 2B1.1(b)(1)(J)

16  because the loss was between $2,500,000, and $7,000,000;

17       c.    A 2-point enhancement pursuant to USSG § 2B1.1(b)(2)(A) because

18  the offense involved ten or more victims;

19       d.    A 2-point enhancement pursuant to USSG § 2B1.1(b)(9) because the

20  offense involved a violation of a prior specific judicial order;

21       f.    A 4-point enhancement pursuant to USSG § 2B1.1(b)(19) because

22  the offense involved a violation of securities law and, at that time of the offense, the

23  defendant was an investment advisor or was a person associated with an investment

24  advisor.

25       The parties agree they are free to argue the application of any other provisions of

26  the United States Sentencing Guidelines. Defendant understands, however, that at the

27  time of sentencing, the Court is free to reject these stipulated adjustments, and is further

28

PLEA AGREEMENT-YOO - 5
(CR 17-00075TSZ)

1  free to apply additional downward or upward adjustments in determining Defendant's

2  Sentencing Guidelines range.

3     **10.**   **Loss Amount.**  For purposes of determining the appropriate sentence, the

4  United States and Defendant agree that the amount of loss is $3,660,216.

5     **11.**   **Restitution.**  Defendant shall make restitution in the total amount of

6  $3,660,216 to the following victims in the following amounts:

7

8     a.     E.B. in the amount of $431,741
       b.     D.C. in the amount of $151,218
9      c.     D.F. and E.F. in the amount of $920,255;
       d.     E.F. in the amount of $20,000;
10     e.     E.G. in the amount of $270,000;
11     f.     H.J.H. in the amount of $253,040;
       g.     R.H. in the amount of $268,789;
12     h.     E.K. in the amount of $401,418;
13     i.     K.K. and S.K. in the amount of $89,500;
       j.     S.K. in the amount of $67,467;
14     k.     Y.K. in the amount of $20,000;
15     l.     C.K. and E.L. in the amount of $196,606;
       m.     C.L. and K.L. in the amount of $50,000;
16     n.     D.L. and D.L. in the amount of $119,680;
17     o.     T.L. in the amount of $150,000;
       p.     D.S. in the amount of $210,501; and
18     q.     Trinity Church in the amount of $40,000.

19     The parties agree that these restitution obligations are separate from, and in

20  addition to, any financial obligations imposed in *Securities and Exchange Commission v.*

21  *Yoo*, Western District of Washington Cause No. C15-1429RAJ.

22     The restitution amounts shall be due and payable immediately and shall be paid in

23  accordance with a schedule of payments as proposed by the United States Probation

24  Office and ordered by the Court. Defendant understands that nothing in this plea

25  agreement prohibits victims of the scheme alleged in the Information from asking the

26  Court for a different amount of restitution at sentencing.

27     **12.**   **Statement of Facts.**  Defendant admits he is guilty of the charged offenses.

28  The parties agree on the following facts:

PLEA AGREEMENT-YOO - 6
(CR 17-00075TSZ)

a.   ***Background:***  Between 2006 and 2015, defendant Chris YOO was a Bellevue, Washington-based investment advisor.  YOO was the majority owner and the Chief Executive Officer of Summit Asset Strategies, LLC ("SAS"), and the managing principal of two related companies—Summit Asset Strategies Investment Management ("SASIM") and Summit Asset Strategies Wealth Management ("SASWM").

b.   YOO administered investment funds, including Summit Stable Value Fund ("SSVF") and Summit Strategic Opportunities Fund I ("SSOF"), which served as investment vehicles for clients of SASIM and SASWM.  The SSVF and SSOF funds invested in foreign and domestic debt and equity, with a focus on investments in South Korea.

c.   YOO raised capital for SSFV and SSOF by offering investors promissory notes (in the case of SSVF) or equity interests (in the case of SSOF) issued by those entities.  The offering materials for these investments stated that investor funds would be deposited into a trust account overseen by a third-party custodian, and then invested in debt and equity investments through the respective fund.  In the case of SSVF, the offering materials stated that the fund would pay each noteholder a fixed interest rate, and would return the noteholder's principal at the end of the term.  The materials provided that SASIM would manage the funds and would be compensated for doing so through a management fee.  The amount of the management fee was to be determined by the net profits of the fund (in the case of SSVF) or the total value of fund assets (in the case of SSOF).

d.   ***Defendant's Ponzi Scheme:***  Shortly after YOO began his investment companies, YOO realized that the management fee allowed under the offering materials would be insufficient to fully fund either the investment companies' operating expenses or his own personal living expenses.  To meet these obligations, beginning in September 2006, and continuing through November 2015, YOO raised money from certain investors (the "Ponzi Victims") by telling them that YOO would invest their funds in SSVF, SSOF, or other investment vehicles, while planning to actually use the money to pay operating costs of YOO's investment companies and YOO's personal living expenses without investing the money in any investment vehicle.

e.   After collecting investments from the Ponzi Victims, YOO, by means of interstate wire communications, deposited the Ponzi Victims' investment proceeds not into a trust account as represented in the offering materials, but instead into a secret bank account ("the Ponzi Account") over which YOO had signatory authority, and which YOO used to orchestrate the misuse of Ponzi Victim investor funds.  After depositing investment proceeds from Ponzi Victims into the Ponzi Account, YOO would funnel the money to (1) YOO's personal accounts; (2) accounts used to pay operating expenses of

PLEA AGREEMENT-YOO - 7
(CR 17-00075TSZ)

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  YOO's investment companies; and (3) make interest payments or principal redemptions
2  to other Ponzi Victims.

3      f.      To conceal his misuse of investor funds, YOO sent the Ponzi Victims
4  fraudulent monthly account statements representing that the Ponzi Victims were invested
   in SSVF, SSOF, or other investment vehicles, when in fact they were not.  To further
5  conceal the scheme, YOO used the proceeds of investments from new investors to make
6  the scheduled interest and principal payments for earlier Ponzi Victims.

7      g.      Following are examples of YOO's misuse of investor funds:

8          (i)     On October 4, 2012 and October 15, 2012, YOO collected $40,000
9                  and $12,000 from Ponzi Victims with the initials E.B. and E.Y.K.,
                   respectively.  YOO deposited the funds into the Ponzi Account and
10                 transferred approximately $22,000 to his own personal account.
11                 YOO used the remainder of the investment to make interest
                   payments to other Ponzi Victims.
12
13         (ii)    On June 17, 2013, a Ponzi Victim with the initials R.H. provided
                   YOO with $50,000 based on YOO's representation that the money
14                 would be invested in a Summit-related investment.  In fact, YOO
15                 deposited the full $50,000 into the Ponzi Account.  YOO then
                   transferred $30,000 of these funds to his own personal account, and
16                 used the remainder of the $50,000 to make interest payments to
17                 other Ponzi Victims.

18         (iii)   On March 7, 2014, YOO collected $50,000 from Ponzi Victims with
19                 the initials K.K and S.K.  YOO deposited the funds into the Ponzi
                   Account, transferred approximately $29,000 to his personal account,
20                 and used the remainder of the funds to make interest payments to
21                 other Ponzi Victims.

22         (iv)    On April 16, 2015, YOO collected $150,000 from Ponzi Victim D.F.
23                 after representing to D.F. that YOO would invest the money in a
                   Summit investment vehicle.  YOO caused the $150,000 check to be
24                 deposited into the Ponzi Account by means of an interstate wire
25                 transmission from New York to Washington.  YOO then transferred
                   $37,000 to a SASIM operating account; $18,900 to personal
26                 accounts controlled by YOO, and approximately $73,000 to make
27                 interest and principal payments to 11 different Ponzi Victims,
                   including D.F.
28

PLEA AGREEMENT-YOO - 8
(CR 17-00075TSZ)

1    h.    ***The SEC Litigation and Settlement:***  In 2014, while YOO was still
2  operating the Ponzi scheme, the United States Securities and Exchange Commission
   ("SEC") opened an investigation into YOO's management of SSVF and SSOP.  As part
3  of the investigation, YOO was required to complete a personal financial statement under
4  penalty of perjury.  The financial statement form required YOO to disclose all bank
   accounts under YOO's control since 2010.  To prevent the SEC from learning of his
5  Ponzi scheme, defendant did not disclose the Ponzi Account in response to this question.
6  YOO listed the Ponzi Account number in response to a different question, but falsely
   identified the account as a relative's trust account.  Further, YOO falsely represented that
7  recent payments made out of the Ponzi Account constituted repayments of loans made by
8  family members, when in fact the payments were interest payments made to Ponzi
9  Victims using the investment proceeds of other Ponzi Victims.  As a result of YOO's
   failure to disclose the Ponzi Account, the SEC did not discover the fraud associated with
10 that account during its investigation.

11   i.    On September 4, 2015, the SEC filed a federal complaint against YOO,
12 SASIM and SASWM as part of a negotiated settlement between the SEC and these
   entities.  The complaint alleged that YOO violated securities laws by, *inter alia*,
13 overstating the value of the assets of SSVF and SSOP and, as a result, collecting
14 management fees in excess of those authorized by the offering materials.  On November
   6, 2015, United States District Judge Richard A. Jones entered a consent judgment
15 permanently enjoining YOO from further acts of securities fraud.  This included a
16 specific prohibition on YOO selling any security by employing any scheme or artifice to
   defraud or by making any false statement of material fact.  In addition, the final judgment
17 ordered damages, civil penalties and other financial obligations against YOO in the
18 amount of $1,142,933.

19   j.    ***The Continuation of the Ponzi Scheme:***  Following the entry of the civil
20 judgment and injunction, YOO continued to solicit funds from additional investors based
21 on fraudulent representations that he would use the funds to purchase legitimate
   investments.  Because it was public knowledge that SSVF and SSOP were no longer
22 permitted to receive investment funds, YOO solicited new money by telling investors he
23 would invest their money in other financial instruments called "Rydex," "PNR," and "JP
   Morgan."  In fact, YOO was not authorized to sell these investments and had no intention
24 of using the investors' money to purchase them.

25   k.    For example, on or about November 19, 2015, YOO solicited a $20,000
26 investment from a Ponzi Victim with the initials E.B. by representing to E.B. that he
   would invest her funds in Rydex.  Defendant falsely represented to E.B. that he had
27 communicated with Guggenheim, the administrators of the Rydex product, and that
28 Guggenheim had agreed to accept the investment.  In fact, YOO had had no
   communications with Guggenheim, had no authorization to sell the Rydex investment,

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and had no intention to use E.B.'s funds to purchase such an instrument. After depositing E.B.'s $20,000 investment into the Ponzi Account, YOO transferred the funds to his personal account, and used some of the funds to make a payment to another Ponzi Victim. Similarly, on or about November 24, 2015, YOO solicited a $10,000 investment from a church by falsely representing to an officer of the church that the $10,000 would be invested in Rydex.

l.      Through the misconduct described above, YOO caused a loss of $3,660,216 to 17 Ponzi Victims. The victims and their corresponding losses are listed in Paragraph 11.

**13.     Non-Prosecution of Additional Offenses.**   As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Agreement that are based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

**14.     Acceptance of Responsibility.**  The United States acknowledges that if Defendant qualifies for an acceptance of responsibility adjustment pursuant to USSG § 3E1.1(a), and if the offense level is sixteen (16) or greater, his total offense level should be decreased by three (3) levels pursuant to USSG § 3E1.1(a) and (b), because he has assisted the United States by timely notifying the authorities of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

**15.     Breach, Waiver, and Post-Plea Conduct.**  Defendant agrees that if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States

PLEA AGREEMENT-YOO - 10
(CR 17-00075TSZ)

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  has evidence.  Defendant agrees not to oppose any steps taken by the United States to

2  nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea

3  Agreement.  Defendant also agrees that if Defendant is in breach of this Plea Agreement,

4  Defendant has waived any objection to the re-institution of any charges in the

5  Information that were previously dismissed or any additional charges that had not been

6  prosecuted.

7       Defendant further understands that if, after the date of this Agreement, Defendant

8  should engage in illegal conduct, or conduct that is in violation of his conditions of

9  (examples of which include, but are not limited to: obstruction of justice, failure to appear

10  for a court proceeding, criminal conduct while pending sentencing, and false statements

11  to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the

12  United States is free under this Agreement to file additional charges against Defendant or

13  to seek a sentence that takes such conduct into consideration by requesting the Court to

14  apply additional adjustments or enhancements in its Sentencing Guidelines calculations

15  in order to increase the applicable advisory Guidelines range, and/or by seeking an

16  upward departure or variance from the calculated advisory Guidelines range.  Under

17  these circumstances, the United States is free to seek such adjustments, enhancements,

18  departures, and/or variances even if otherwise precluded by the terms of the plea

19  agreement.

20       **16.     Waiver of Appeal.**  As part of this Plea Agreement and on the condition

21  that the Court imposes a custodial sentence that is within or below the Sentencing

22  Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines

23  range) that is determined by the Court at the time of sentencing, Defendant waives to the

24  full extent of the law:

25            a.     any right conferred by Title 18, United States Code, Section 3742 to

26  appeal the sentence, including any restitution order imposed; and

27

28

PLEA AGREEMENT-YOO - 11
(CR 17-00075TSZ)

b.      any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

Furthermore, this waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. 2241, to address the conditions of his confinement or the decisions of the Bureau of Prisons regarding the execution of his sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

**17.     Voluntariness of Plea.**  Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily and that no threats or promises, other than the promises contained in this Plea Agreement, were made to induce Defendant to enter this of guilty.

**18.     Statute of Limitations.**  In the event this Agreement is not accepted by the Court for any reason, or Defendant has breached any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

//

//

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**19.    Completeness of Agreement.**  The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties. This Agreement binds only the United States Attorney's Office for the Western District of Washington.  It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

DATED: March 20, 2017.


CHRIS YOUNG YOO
Defendant


MICHELLE PETERSON
Attorney for Defendant


SETH WILKINSON
Assistant United States Attorney

PLEA AGREEMENT-YOO - 13
(CR 17-00075TSZ)