THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br><br>     v.<br><br>CHRIS YOUNG YOO,<br><br>                    Defendant. | Case No. CR17-00075 TSZ<br><br>DEFENDANT'S SENTENCING MEMORANDUM |

COMES NOW, the defendant, Chris Young Yoo, by and through his counsel, Michelle Peterson and Kerry Swendt, and submits this sentencing memorandum.

## I.      INTRODUCTION

On March 20, 2017, Mr. Yoo entered pleas of guilty to the Information, which charged a violation of Wire Fraud in violation of Title 18, United States Code, Section 1343, and False Statement to the United States in violation of Title 18, United States Code, Section 1001. The defense, government and U.S. Probation recommend a sentence of 80 months. Mr. Yoo is deeply remorseful for the emotional and financial harm he has brought to his victims. He has cooperated fully and accepts full responsibility for his conduct. For these reasons, the defense respectfully requests this Court accept the joint recommendation of 80 months.

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WASHINGTON  98101
206.224.7618   michelle@michellepetersonlaw.com

## II.    DISCUSSION

### A.  § 3553 Sentencing Factors

The United States Supreme Court has held that the sentencing guidelines are not mandatory but only advisory and are one factor, among many, to be considered when imposing a sentence. *United States v. Booker*, 543 U.S. 220, 245, 259-260 (2005); *Gall v. United States*, 128 S. Ct. 586, 594-97 (2007); *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007). The Court shall impose a sentence sufficient, but not greater than necessary, while taking into consideration the following factors: 1) the nature and circumstances of the offense; 2) the history and characteristics of the defendant; 3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 4) the need for the sentence to afford adequate deterrence to criminal conduct; 5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment; 7) the types of sentences available; 8) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and 9) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

### 1.  Mr. Yoo's Background

An 80 month sentence is supported by Mr. Yoo's history and characteristics. Mr. Yoo comes from a broken family and experienced hardships at a young age. Mr. Yoo was born in Korea, and moved to Guam with his family.  His father was a violent man. His parents had different views on finances which caused tension in their marriage. Mr. Yoo's father was severely frugal and his mother aspired to live a more expensive, lavish lifestyle. Eventually, his mother moved the family to United States, leaving behind her husband. Mr. Yoo's mother

DEFENDANT'S SENTENCING MEMORANDUM - 2
CASE NO. CR17-00075 TSZ

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WASHINGTON  98101
206.224.7618   michelle@michellepetersonlaw.com

desired a lifestyle that her husband and her financial situation could not support.  She only informed Mr. Yoo's father of her intent to divorce him after she had moved the family to the United States. His father returned to Korea and Mr. Yoo has had no relationship with him since age eleven.

Despite Mr. Yoo's mother's desire for a more lavish lifestyle, it turned out that Mr. Yoo's family suffered even greater financial hardship after his parents' divorce. When Mr. Yoo was in high school, he lived in a one-bedroom apartment with his mother who worked two to three jobs to support the family. During this time, one of Mr. Yoo's older sisters tragically died in a car accident while driving home from college over the Christmas holiday. She had agreed to share a ride home with another student and it is believed that he fell asleep at the wheel killing them both. Mr. Yoo, only fifteen years old at the time, was forced to translate the news of his sister's death to his mother, who did not speak English.

Mr. Yoo's mother eventually stopped coming home, leaving Mr. Yoo largely without parental support or supervision. His mother remarried and sent Mr. Yoo away to school. After graduation, Mr. Yoo attended various colleges intermittently, often having to take time off to financially support himself. Mr. Yoo ultimately dropped out of school.

After dropping out, Mr. Yoo worked as a store clerk during the graveyard shift at a local gas station and convenience store. During his employment, Mr. Yoo came to know a customer who frequented the store. The customer wore an expensive pinstripe suit and drove a Ferrari. Every morning, he purchased coffee and The Wall Street Journal. Mr. Yoo was impressed by this man, viewing him as a symbol of success. Mr. Yoo eventually worked up the courage to ask the man what he did for a living. The man told Mr. Yoo that he was a stockbroker and gave Mr. Yoo his business card and encouraged him to apply to his company.

DEFENDANT'S SENTENCING MEMORANDUM - 3
CASE NO. CR17-00075 TSZ

This opportunity had a profound effect on Mr. Yoo, who was alone and struggled to make ends meet. Mr. Yoo was raised by his mother who defined wealth as success and always wanted for more, but lived in both financial and emotional poverty. He lacked familial support, having no relationship with his father and a period of estrangement from his mother for 13 years. Mr. Yoo saw a career as a broker as his path to success.

Mr. Yoo worked at different brokerage firms and carved out a successful career. He married and had three children. Despite Mr. Yoo's success and modest income, he felt the need to become more successful to provide for his family. Despite his limited time as a broker and lack of management experience, Mr. Yoo opened an investment firm called Summit Asset Strategies, LLC ("SAS"). Additionally, he opened two related companies, Summit Asset Strategies Investment Management ("SASIM") and Summit Asset Strategies Wealth Management ("SASWM").

### 2.  The Offense

SAS opened in 2006, just before the economic crisis. Mr. Yoo realized the business lacked sufficient funds to be sustainable. He naively thought that he would be able to find investments and investors in Korea and that they would be eager to invest with him. He soon learned that the Korean investors were cautious and wanted to see a track record of successful investments before they would agree to invest with Mr. Yoo. In a desperate effort to keep his business open, Mr. Yoo wrongfully began diverting investors' money into a separate account to fund SAS business operating expenses as well as his personal expenses, instead of investing the funds as he told the investors he would. Mr. Yoo believed it was only for a short period of time and that once his firm was up and running he would be able to fully pay back every victim.

SAS had some early success and Mr. Yoo believed that the business would be able to

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WASHINGTON  98101
206.224.7618   michelle@michellepetersonlaw.com

sustain itself. Then just a year after opening his business, the economy took a dramatic

downturn, seriously impacting SAS' investments in real estate, and several investments failed

due to unforeseen causes. These events drove SAS further into financial hardship. Instead of

concentrating on repaying investors, Mr. Yoo continued diverting funds from them to keep his

business going, truly believing the next investment would earn enough to pay back all victims

as well as fully fund SAS. While misguided, Mr. Yoo never intended to permanently deprive

his victims of their investments.

In September 2015, the SEC filed a complaint against Mr. Yoo. In November 2015, the

Court entered a consent judgment enjoining Mr. Yoo from acts of securities fraud. Mr. Yoo,

desperate to keep his company afloat, solicited funds from victims, offering to invest the money

and instead diverted the money.

Mr. Yoo diverted victims' funds in an effort to make SAS a successful investment

advisory firm. Mr. Yoo believed that if he could make SAS successful, he could earn enough

money to repay every victim. As SAS did not provide a steady income, Mr. Yoo also used

victim funds for personal expenses. However, he did not seek a grandiose lifestyle, and

contributed what he could to SAS. In 2014, Mr. Yoo sold his home and put the sale proceeds

into SAS to "true up" at the end of the year, as SAS financial status did not meet its expected

value.

### 3. Post Offense Conduct

Mr. Yoo is truly remorseful for his actions. His conduct is aberrant to his otherwise law-

abiding life. He has spent his time since pleading guilty reflecting on the severity of his crime

and the impact it has had on his victims. In his letter accepting responsibility, Mr. Yoo wrote,

in part:

DEFENDANT'S SENTENCING MEMORANDUM - 5
CASE NO. CR17-00075 TSZ

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WASHINGTON  98101
206.224.7618   michelle@michellepetersonlaw.com

> My crime have caused so much pain and suffering to the victims and my family. I know the victims' lives are forever changed. I know they are dealing with extreme financial hardships because of the losses. I am very sorry for everything I did… I truly am sorry for what I had done to them. I know it is impossible for the victims to forgive me but I want to let them know that I am sorry for betraying them, defrauding them. The friendships and trusts they gave me, I failed them. I am very sorry… please forgive me. I will accept the punishment of US government and I will also do what I can for the rest of my life – to make restitutions to all victims, apologizing and asking for their mercy.

*See* Exhibit F.

Mr. Yoo's remorse and acceptance of his actions are demonstrated through attached letters of support. See Exhibit A-E. His Licensed Mental Health Counselor wrote:

> Chris has openly and honestly accepted full responsibility for his fraudulent actions. He has been diligent in identifying the events and decisions made which led to his current situation. Chris has been reflective, thoughtful and fully engaged in processing the impact his actions have had on his victims. Chris has expressed an understanding that being incarcerated is a consequence for his crime.

*See* Exhibit A.

In addition to cooperating with the government and accepting responsibility for his actions, Mr. Yoo also cooperated with United States Probation, as demonstrated by the presentence report: "He [Mr. Yoo] entered a timely plea of guilty, and was entirely candid and cooperative during his meetings with the probation officer during the presentence process." PSR ¶ 21.

Mr. Yoo recognizes the pain and suffering this has inflicted on others. In addition to his victims, Mr. Yoo has caused a lifetime of pain and suffering for his wife and three young children who must live not only with the knowledge that their father was a fraudster but who also left them in a dire financial situation. Mr. Yoo accepts responsibility for his family, recognizing the breadth his actions have had on the people around him:

Just like the victims, my family deals with extreme financial hardship. But
I know that my own sufferings are no comparisons to the mental, emotional,
physical suffering the victims are experiencing. I know now that my family
is also victims of my crimes.

*See* Exhibit F.

### 4. Cooperation

In 2014, Mr. Yoo was under SEC investigation, however, no law enforcement

investigation had commenced. Mr. Yoo approached the United States Attorney's office and

disclosed his criminal conduct, with the intention of fully cooperating. Since that time, Mr. Yoo

has cooperated with the government through every stage of prosecution. Without any immunity

or promise of any leniency, Mr. Yoo voluntarily met with federal investigating agents and the

Assistant United States Attorney over a period of almost two days. He thoroughly discussed the

Ponzi scheme and its distinction from his legitimate businesses. Mr. Yoo's businesses were

complex and included offices in the United States and Korea. In order to help the government,

Mr. Yoo provided financial statements related to the Ponzi scheme and arranged for business

records in Korea to be produced to the United States Attorney's Office. Mr. Yoo did so without

any protection for his statements or documents.

### 5. Comparative Cases

Several relevant cases from this district give context to sentences imposed for similarly-

situated defendants for investment related fraud.

| Case Name and Number | *U.S. v. Charles Chesterfield*, CR12-145-TSZ | *U.S. v. Richard A. Finger*, CR11-382-RSM | *U.S. v. Rhonda Breard*, CR10-81-MJP | *U.S. v. Chris Yoo*, CR17-00075-TSZ |
|---|---|---|---|---|
| Loss Amount | $3.1 million | $7 million | $11 million | $3.6 million |
| Length of scheme | 18 months | 2 years | 10 years | 9 years |

DEFENDANT'S SENTENCING MEMORANDUM - 7
CASE NO. CR17-00075 TSZ

| Initial Intent | Striving to keep company running | Unable to determine from sentencing memorandum | Permanently deprive investors of money | Striving to keep company running |
|---|---|---|---|---|
| Goal of repaying victims | Intent to fully repay all victims | Unable to determine from sentencing memorandum | No intent to repay victims | Intent to fully repay all victims |
| Cooperation | Fully cooperated | Fully cooperated | Fully cooperated | Approached government about crime and fully cooperated |
| Guidelines Range | 63-78 months | 78-97 months | 97-121 months | 97-121 months |
| Sentence imposed | 40 months | 54 months | 80 months | |

While no two cases or defendants are identical, these cases demonstrate sentences below the guideline range are appropriate when certain factors are present. Mr. Yoo not only cooperated with the government, but alerted them to his conduct before a federal investigation had begun. The motivation for his crime was to save his business and he intended to repay his victims at all times, as unrealistic as that may have been. While there are differences between Mr. Yoo's case and the cases listed above, there are a number of similar mitigating factors. A sentence of 80 months would avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, as considered by 18 U.S.C. § 3553(a).

## B.   SENTENCING RECOMMENDATION

The parties agree the 2014 edition of the Sentencing Commission Guideline Manual should apply. Although USSG §1B1.11 directs the Court to apply the Guideline Manual in

DEFENDANT'S SENTENCING MEMORANDUM - 8
CASE NO. CR17-00075 TSZ

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WASHINGTON  98101
206.224.7618   michelle@michellepetersonlaw.com

effect on the date of sentencing, it allows for an exception if the use of that edition would violate the *ex post facto* clause of the United States Constitution by providing a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" USSG §1B1.11; *United States v. Waters*, 771 F.3d 679, 680 (9th Cir. 2014) (quoting *Peugh v. United States*, —– U.S. ——, 133 S.Ct. 2072, 2082 (2013)). Instead, the Court should apply the manual in effect on the date that the offense was committed. USSG §1B1.11(b)(1). The calculations under the 2017 manual includes a "substantial hardship" enhancement that is absent from the 2014 Guideline Manual, which causes Mr. Yoo's sentencing range to be higher than it would under the manual in place when the offense was committed.

Because the application of the 2017 Guideline Manual would violate the *ex post facto* clause, the Court "shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." USSG §1B1.11(b)(1). For convictions of wire fraud, each use of the wires constitutes an independent offense. *United States v. Pace*, 314 F.3d 344, 350 (9th Cir. 2002). Although Mr. Yoo's conduct continued into November 2015, the offense of wire fraud was transmitted and completed on April 16, 2015. Information ¶ 11. Therefore, the 2014 Guideline Manual should be applied.

The parties agree the 2014 Sentencing Guideline calculation pursuant to § 2B1.1 is as follows:

| | | |
|---|---|---|
| Base Offense Level: | +7 | (§ 2B1.1(a)(1)) |
| Specific Offense Characteristics | | |
| Loss:   $3,660,216 | +18 | (§ 2B1.1(b)(1)(J)) |
| 10+ Victims | +2 | (§ 2B1.1(b)(2)(A)) |
| Violation of prior specific judicial order | +2 | (§ 2B1.1(b)(9)) |

DEFENDANT'S SENTENCING MEMORANDUM - 9
CASE NO. CR17-00075 TSZ

| | | |
|---|---|---|
| Violation of securities law | +4 | (§ 2B1.1(b)(19)) |
| Adjustments | | |
| Acceptance of Responsibility | -3 | |

---

| | |
|---|---|
| Total Offense Level | 30 |

Given that Mr. Yoo has no criminal history, his Criminal Category is I, thereby resulting in a corresponding Guideline range of 97 to 121 months.

### C.    BUREAU OF PRISONS DESIGNATION

The defense respectfully requests that the Court recommend Mr. Yoo be designated to FCI Sheridan. Mr. Yoo's family resides in Bellevue, WA. A designation to FCI Sheridan would enable Mr. Yoo's family to visit him during his lengthy incarceration. Mr. Yoo has three young children who would benefit from this proximity. Further, in light of the fact Mr. Yoo has known about this case since 2014, approached the government about his conduct, and remained in the area to cooperate with the government throughout the course of the investigation, the defense requests that Mr. Yoo be permitted to self-surrender on a designated date to the facility determined by the Bureau of Prisons.

### D.    CONCLUSION

Mr. Yoo committed a very serious crime, however, his motivation was not grandiosity or a desire to steal from his victims, but rather to make his business successful. Mr. Yoo recognizes the pain and suffering of his victims and accepts he will be punished. A sentence of 80 months, as recommended by the defense, the government, and United States Probation, is a substantial amount of imprisonment which is sufficient but not greater than necessary to both punish Mr. Yoo and deter any future criminal conduct.

**MICHELLE PETERSON LAW, PLLC**
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WASHINGTON  98101
206.224.7618   michelle@michellepetersonlaw.com

1    DATED this 10th day of August, 2017.

2

3                                      Michelle Peterson Law, PLLC

4                                      */s/ Michelle Peterson*
                                       Michelle Peterson, WSBA No. 33598

5

6                                      */s/ Kerry Swendt*
                                       Kerry Swendt, WSBA No. 49922
7                                      1420 5th Avenue, Suite 2200
                                       Seattle, WA  98101
8                                      Tel: 206.224.7617
                                       Email: kerry@michellepetersonlaw.com
9                                      Email: michelle@michllepetersonlaw.com
                                       Attorneys for Defendant
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANT'S SENTENCING MEMORANDUM - 11
CASE NO. CR17-00075 TSZ

1

### <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on August 10, 2017, I electronically filed the foregoing with the Clerk

3 of the Court using the CM/ECF system which will send notification of such filing to all counsel

4 of record.

5

6       Dated this 10th day of August, 2017.

7                                                   */s/ Kerry Swendt*
                                                    Kerry Swendt, WSBA No. 49922
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANT'S SENTENCING MEMORANDUM - 12
CASE NO. CR17-00075 TSZ

**MICHELLE PETERSON LAW, PLLC**
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WASHINGTON  98101
206.224.7618   michelle@michellepetersonlaw.com