The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | NO. CR17-0075TSZ |
|---|---|
| Plaintiff | **SENTENCING MEMORANDUM** |
| v. | |
| CHRIS YOO, | |
| Defendant. | |

## I.   INTRODUCTION

Defendant Chris Yoo, a former investment advisor, is to be sentenced for stealing almost $3.7 million from his clients. Yoo encouraged clients to liquidate their retirement accounts, sell their homes, or take out second mortgages and entrust him with the proceeds. Yoo promised he would invest his victims' money in secure promissory notes with guaranteed payouts. But Yoo failed to invest the money at all, and instead used it to fund his lavish lifestyle, which included living in a multi-million dollar Medina home and driving luxury cars. As a result of Yoo's fraud, his 17 victims have seen their financial futures destroyed. As one victim writes:

//

//

UNITED STATES v. YOO, CR17-0075TSZ
SENTENCING MEMORANDUM- 1

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

> I have lost everything I worked for, including money gifted to me by my grandparents and parents. I have lost my future. I worked an honest job, packing my lunch to work each day to save. I thought I was making sound financial decisions, and trusting Yoo cost me everything. . . . My life savings. Gone.

Victim Impact Statement of E.B.

The parties are jointly recommending an 80-month sentence. The government recommends this below-guideline sentence because Yoo cooperated extensively with the government. Mr. Yoo contacted the U.S. Attorney's Office to report his own fraud, submitted to an interview in which he disclosed his conduct, and voluntarily turned over documents documenting the fraud.

Notwithstanding this cooperation, Mr. Yoo's conduct—and the need to provide justice to the victims—requires the imposition of a substantial prison sentence. An 80-month sentence is necessary to reflect the seriousness of the offense, to impose just punishment, to promote respect for the law, and to deter Yoo and others from future misconduct.

## II.    BACKGROUND

### A.    Chris Yoo's Investment Companies

Defendant is a former Bellevue-based investment advisor. PSR ¶ 7. He was the majority owner and the Chief Executive Officer of Summit Asset Strategies, LLC. *Id.* In this capacity, he administered investment funds, including Summit Stable Value Fund ("SSVF") and Summit Strategic Opportunities Fund I ("SSOF"), which served as investment vehicles for his clients. *Id.* The funds invested in foreign securities, with a focus on investments in South Korea. *Id.*

Yoo raised capital for SSFV and SSOF by offering investors promissory notes or equity interests issued by those entities. *Id.* ¶ 9. The offering materials for these investments stated that investor funds would be deposited into a trust account overseen

UNITED STATES v. YOO, CR17-0075TSZ
SENTENCING MEMORANDUM- 2

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

by a third-party custodian, and then invested in debt and equity investments through the respective fund. *Id.*

**B.    The Ponzi Scheme**

For most of his investors, Yoo actually placed their investment funds in the SSVF and SSOF investments. However, Yoo identified a subset of prospective investors (the 17 victims in this case) who Yoo believed placed a particularly high level of trust in Yoo. As described in the victim impact statements, Yoo encouraged these investors to entrust him with their life savings, and urged them to raise more capital for him to invest by rolling over retirement plans, selling their houses, or taking on more debt.

Yoo, however, had no intention of actually investing these victims' money. *Id.* ¶ 10. Instead of depositing the money into the SSVF or SSOF trust accounts as specified in the investment materials, Yoo funneled the money into a secret bank account he controlled at U.S. Bank. *Id.* ¶ 11. Yoo then used the proceeds to pay his living expenses and support his business. *Id.* In classic Ponzi scheme fashion, Yoo also used investor money to make interest payments to earlier investors whose funds he had likewise solicited and embezzled. *Id.* Yoo stole $3.66 million from investors in this manner between 2006 and 2015. *Id.* ¶ 17. To conceal the fraud, Yoo sent the victims fraudulent investment reports stating that the victims were invested in Summit funds when, as Yoo knew, they were not. *Id.* ¶ 12.

**C.    The SEC Investigation**

In 2014, the United States Securities and Exchange Commission ("SEC") opened an investigation into Yoo's management of SSVF and SSOF. *Id.* ¶ 14. The investigation centered on the manner in which Yoo valued the securities in the SSVF and SSOF funds. The SEC alleged that Yoo inflated the value of these investments so that he could pay himself a management fee greater than he would have received if he had accurately valued the investments. *See United States v. Yoo et al*, C15-1429RAJ. For example, the SEC alleged that Yoo claimed in annual reports that SSVF owned a security called Prime

UNITED STATES v. YOO, CR17-0075TSZ
SENTENCING MEMORANDUM- 3

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Pacific Bank, which Yoo valued at $3.81 per share.  In fact, the SEC alleged, the fund actually owned shares of a related entity called Prime Pacific Financial Services, whose shares were valued at between 27 and 70 cents.  Yoo settled with the SEC in September 2015. *Id. ¶* 15.  Under the stipulated judgment, Yoo was required to pay $1,142,933 in damages, and was restrained from further acts of securities fraud.  *Id.*

Before entering into the settlement, and at the SEC's request, Yoo completed a personal financial statement under penalty of perjury.  *Id.* ¶ 14.  The financial statement form required Yoo to disclose all bank accounts under Yoo's control since 2010.  *Id.*  To prevent the SEC from learning of his Ponzi scheme, Yoo did not accurately disclose the secret bank account where he had been depositing his victims' funds.  *Id.*  As a result of Yoo's failure to disclose the account, the SEC did not discover the fraud associated with that account during its investigation.  *Id.*

**D.     Defendant Continued To Solicit More Money After the SEC Settlement.**

Even after settling with the SEC, Yoo continued to fraudulently solicit funds from additional investors.  *Id.* ¶ 16.  On September 11, 2015, Yoo sent his investors a letter announcing that, going forward, he would be doing business under the name "Vertex Strategies." Ex. A.  In the letter, Yoo denied any wrongdoing and stated that the SEC was "an agency madly driven to erase its image as the agency that failed to identify true financial criminals . . . by recklessly examining every small investment firm in the country." *Id.*  Yoo attributed the SEC's allegations against Summit to the fact that the SEC "had trouble understanding our pooled investment policy."

Yoo then solicited new money by telling investors he would invest their money in other financial instruments called "Rydex," "PNR," and "JP Morgan."  PSR ¶ 16.  In fact, Yoo was not authorized to sell these investments and had no intention of using the investors' money to purchase them.  *Id.*

For example, on November 19, 2015, Yoo emailed a victim, who had previously invested with Yoo, and suggested that she make an additional $25,000 investment, which

UNITED STATES v. YOO, CR17-0075TSZ
SENTENCING MEMORANDUM- 4

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Yoo said he would put into Rydex. Ex B.  When the victim replied that she did not have $25,000 to invest, Yoo responded by asking "can you at least put in $15K to start the program?"  The victim agreed.  The next day, however, Yoo told victim that he had just finished "a long conference call with Guggenheim" and that Guggenheim was requiring at least a $20,000 investment. *Id.* "Let me know if you can do 20k," Yoo pressed.  The victim agreed and wired Yoo the $20,000. *Id.* Yoo later admitted to the government that he had never had any conference call with "Guggenheim," and he had no intention of placing the victim's funds in this investment.  PSR ¶ 16.   Instead, Yoo used the $20,000 to make an interest payment to another of his victims. *Id.*  Five days later, Yoo solicited another $10,000 from his church by falsely stating that he would place $10,000 of the church's money in the "Rydex" investment. *Id.*

Throughout this period, Yoo used the proceeds of his fraud to live an extravagant lifestyle.  PSR ¶ 17.  For example, between March 2014 and July 2015, Yoo lived in a Medina house on Evergreen Point Drive that was then valued at over $3 million.  In July 2015—just before reaching the settlement with the SEC—Yoo moved into a Bellevue home valued at approximately $4 million, agreeing to pay over $6,000 per month in rent despite the impending seven-figure judgment against him. *Id.*  Just a few months earlier, Yoo had purchased a BMW M3. *Id.*  A year before that, Yoo had purchased a used Mercedes for approximately $65,000. *Id.*

E.     **Defendant's Cooperation With the Government**

In December 2015, at defendant's direction, defense counsel contacted the United States Attorney's Office to report that a client wanted to confess to orchestrating a Ponzi scheme.  At that time, the government was unaware of defendant's fraudulent Ponzi account or that Yoo had wholly failed to invest some of his victims' funds.  However, numerous victims had complained to local law enforcement about their loss of funds, and local authorities had begun an investigation.

UNITED STATES v. YOO, CR17-0075TSZ
SENTENCING MEMORANDUM- 5

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Yoo then participated in two days of interviews with the United States Attorney's Office, the Federal Bureau of Investigation, and the Washington Department of Financial Institutions. In the interviews, Yoo fully disclosed the offense conduct described in the Information. Yoo did not minimize the offense—he himself characterized it as a "Ponzi scheme" and his investors as "victims."

Yoo did insist that he did not engage in criminal conduct with respect to those investors whose money was actually placed in the Summit funds (*i.e.*, those investors who are not named as victims in this prosecution). While Yoo acknowledged that essentially all of the money invested in those funds is gone, he maintained that the money was lost through legitimate, but unsuccessful, investments in Korea. Defendant voluntarily produced all documents requested by the government. The government did not develop substantial evidence of criminal activity in connection with those funds.

On March 20, 2017, defendant entered a guilty plea to an Information charging Yoo with one count of Wire Fraud and one count of False Statement to the United States. As part of the plea agreement, defendant agreed to pay full restitution to the victims of his Ponzi scheme. The government is unaware of Yoo paying any restitution to date.

### III.   SENTENCING GUIDELINES

**A.   The 2014 Sentencing Guidelines Should Apply.**

The parties have agreed that the Court should apply the 2014 edition of the United States Sentencing Guidelines. Plea Agreement ¶ 9. Under USSG § 1B1.11, the Court generally "shall use the Guideline Manual in effect on the date that the defendant is sentenced." However, if the use of that Guideline Manual would violate the *ex post facto* clause of the U.S. Constitution (because it would provide for a sentencing range higher than the manual in place on the date the offense was committed), then the Court should apply the manual "in effect on the date that the offense was committed." USSG §1B1.11(b)(1). Here, the offenses were committed on April 16, 2015 and May 15, 2015, when the 2014 Guidelines were in place. The guideline calculation under the 2017

UNITED STATES v. YOO, CR17-0075TSZ
SENTENCING MEMORANDUM- 6

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

edition would be higher than the calculation under the 2014 edition because of the addition of a four-point victim enhancement that now applies when five or more victims suffer substantial financial hardship. USSG 2B1.1(b)(2(B).

The Probation Office recommends application of the 2017 Guidelines because "there was offense *conduct* which continued into late November of 2015." PSR ¶ 22 (emphasis added). However, by its explicit terms, USSG § 1.B1.11 turns on when the "*offense of conviction* was committed"—not on when conduct related to the offense was complete. It is well established that, under the wire fraud statute, each individual wiring is a "discrete offense." *United States v. Garlick,* 240 F.3d 789, 792 (9th Cir. 2001). Thus, the offense is complete when the wiring is sent. Here, while Probation is correct that the *scheme to defraud* continued into November 2015, the *offense of conviction*—the charged wiring—occurred, and was completed, on April 16, 2015. *See* Information at 4. Accordingly, the 2014 Guidelines apply here.

**B.    The Guideline Calculation**

The parties agree that the following guideline calculation applies:

| **Item** | **Adjustment** | **Provision** |
|---|---|---|
| Base offense level | +7 | 2B1.1(a)(1) |
| Loss exceeding $2,500,000 | +18 | 2B1.1(b)(1)(J) |
| 10 or more victims | +2 | 2B1.1(b)(2)(A) |
| Violation of judicial order | +2 | 2B1.1(b)(9) |
| Defendant was an investment advisor | +4 | |
| Acceptance of Responsibility | -3 | 3E1.1(b) |
| **Total** | 30 | |

Defendant falls into Criminal History Category I. The guideline range for this offense level is **97-121** months.

UNITED STATES v. YOO, CR17-0075TSZ
SENTENCING MEMORANDUM- 7

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## IV. RATIONALE FOR SENTENCING RECOMMENDATIONS

The government recommends that the Court sentence Mr. Yoo to 80 months of imprisonment. The sentence is necessary to achieve the goals set out in 18 U.S.C.§ 3553 for the reasons set for the below.

### A. Nature and Circumstances of the Offense

The offense conduct is aggravated in several respects. Most significant is the effect on the victims. The Victim Impact Statements submitted to the Court are heartbreaking. The victims invested with defendant because he promised a secure and guaranteed, if modest, payout. Instead, Yoo simply stole their life savings. As a result of the fraud, some victims have had to sell their homes and move out of state. Others delayed their retirements or had to go back to work. Another victim reports, and his doctor confirms, the onset of an anxiety disorder following his discovery of the fraud. Yoo not only robbed his victims of the comfortable retirements they had earned and reasonably expected, but also of their peace of mind.

Second, the conduct is aggravated by the degree to which Yoo played on his victims' trust. In his interview with the government, Yoo stated that he chose his victims by determining which ones were likely to place the highest degree of trust in him. As reflected in the Victim Impact Statements, Yoo carefully cultivated his victims' trust. Two victims report that Yoo told them he would manage their money as if it were his mother's money, and others report that Yoo claimed to be their friend. Yoo even went so far as to steal his own church's savings.

Third, the conduct is aggravated by the duration of the fraud. Defendant stole from his victims on a regular basis over a period of *nine years*. The sentence should reflect the fact that this was not an isolated incident in the defendant's life, but a concerted fraud scheme that he chose to orchestrate over many, many years.

Fourth, the offense conduct is aggravated by the fact that the defendant lied to the SEC in sworn documents to conceal his fraud. By making false statements to the United

UNITED STATES v. YOO, CR17-0075TSZ
SENTENCING MEMORANDUM- 8

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

States, defendant committed an additional felony and allowed himself to carry on his fraud. This additional conviction has no effect on the guideline calculation because of the USSG's grouping provisions, but the sentence should reflect this additional conduct.

Finally, the sentence should reflect the fact that Yoo continued to solicit funds even after an injunction was entered against him in the SEC lawsuit. Despite knowing that he had engaged in classic Ponzi-like behavior, Yoo criticized the SEC for bringing suit against him, and then continued the fraud, squeezing every last dime possible out of those who still trusted him.

**B.     The Defendant's History and Characteristics**

The defendant's history and characteristics include both mitigating and aggravating facts. On the mitigating side, defendant is entitled to substantial credit for his cooperation with law enforcement. While the government would eventually have unwound Yoo's crimes based on the witnesses' complaints and Yoo's own bank records, Yoo saved the government substantial resources by explaining the fraud, producing relevant documents, and agreeing to a pre-indictment guilty plea. Yoo should receive a great deal of credit for this cooperation.

Yoo's history and characteristics also have aggravating components. First, Yoo stole from investors not because of financial need, but because he wanted to live a lavish lifestyle. It speaks volumes that, with SEC allegations of fraud pending against him, and knowing that he had stolen millions of dollars from his victims, defendant moved into a $4 million house and agreed to pay over $6,000 per month in rent. The contrast is stark between Yoo's profligate spending on the one hand, and his victims' hopes for modest but comfortable retirements on the other.

Also relevant to Yoo's history and characteristics is the fact that Yoo engaged in misconduct regarding the SSVF and SSOF funds. While this conduct may not itself have risen to the level of criminal charges, the allegations and judgment in the SEC civil suit

UNITED STATES v. YOO, CR17-0075TSZ
SENTENCING MEMORANDUM- 9

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

reflect additional dishonesty, which resulted in more than a million dollars in additional damages, to other investors. This is another significant aggravating factor.

## C.     Other Sentencing Factors

The sentence must be calculated to deter the defendant from committing further crimes. Defendant presents at least a moderate risk of re-offense. He engaged in criminal activity for years, telling lie upon lie, including to authorities investigating his conduct. Even after being sued by the SEC for fraud, he continued to commit more fraud in violation of a specific court injunction. While white collar criminals are often not thought of as being likely repeat offenders, recidivism is not uncommon in those convicted of investment fraud. Indeed, two cases are currently pending in this district charging investment fraud by defendants with previous securities fraud convictions. *United States v. Zieske,* CR17-0137JLR; *United States v. Hong,* CR17-163TSZ. The sentence must be severe enough to deter Yoo from committing further crimes.

The sentence should also be severe enough to deter other investment advisors from engaging in fraud. Specifically, the penalty must be great enough to outweigh the benefit of the nearly $3.7 million that Yoo stole. The government submits that any sentence less than six years (80 months) would be insufficient to serve this purpose.

Finally, the sentence should be proportionate to other sentences imposed on persons who committed similar crimes. The government believes the prior prosecution most analogous to this one is *United States v. Breard*, CR10-0081MJP. Rhonda Breard was an investment advisor who stole approximately $11 million from investors. Like Mr. Yoo, Ms. Breard self-disclosed her fraud to the U.S. Attorney's Office and fully cooperated with the government. Breard, like Yoo, faced a guideline range of 97-121 months. (While Breard's loss was significantly greater, her guideline calculation did not include the enhancement applicable to Yoo for violating the SEC injunction.) Based on those facts, Judge Pechman sentenced Breard to 80 months of imprisonment, which is the sentence the parties and probation recommend here.

UNITED STATES v. YOO, CR17-0075TSZ
SENTENCING MEMORANDUM- 10

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V.  CONCLUSION

For the foregoing reasons, the government respectfully recommends that the Court sentence Yoo to 80 months of imprisonment.

Dated:  August 10, 2017.

*s/ Seth Wilkinson*
SETH WILKINSON
Assistant United States Attorney

UNITED STATES v. YOO, CR17-0075TSZ
SENTENCING MEMORANDUM- 11

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s).

*s/ Kylie Noble*
KYLIE NOBLE
Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA 98101-3903
Telephone: (206) 553-2520
Fax: (206) 553-4440
E-mail: kylie.noble@usdoj.gov

UNITED STATES v. YOO, CR17-0075TSZ
SENTENCING MEMORANDUM- 12

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970