UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CR17-75TSZ |
| | ORDER |
| CHRIS YOUNG YOO, | |
| Defendant. | |

THIS MATTER comes before the Court on Defendant's Motion for Compassionate Release, docket no. 53. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following order DENYING the motion.

**Background**

Defendant was resentenced on December 28, 2018, to 97 months in the custody of the United States Bureau of Prisons ("BOP"). *See* Amended Judgment (docket no. 40). Defendant is currently incarcerated at FCI Sheridan and has a projected release date of July 10, 2024. Defendant might also be eligible for additional early release credits if he successfully completes the RDAP program. He anticipates placement in a half-way

ORDER - 1

house in the summer of 2023.  Def.'s Mot. at 2 (docket 53).  Upon release, defendant will be on supervised release for three (3) years.  He now seeks immediate release on the grounds that his medical conditions (obesity, latent tuberculosis, hypertension, hyperlipidemia (elevated cholesterol levels), and pre-diabetes) increase the possibility of acute illness or death from Coronavirus Disease 2019 ("COVID-19").

**Discussion**

A sentence is generally considered final and may not be altered except in limited circumstances.  <u>See</u> 18 U.S.C. § 3582(b); <u>see also</u> <u>Dillon v. United States</u>, 560 U.S. 817, 824 (2010).  Prior to 2018, a modification for reasons other than a post-conviction reduction in the applicable sentencing range could be made only upon a motion brought by the Director of BOP.  <u>See</u> <u>United States v. Rodriguez</u>, 451 F. Supp. 3d 392 (E.D. Penn. 2020).  Congress has since enacted the First Step Act of 2018, which permits a defendant, after exhausting administrative remedies,[1] to directly request a reduction in the term of incarceration.  <u>See</u> 18 U.S.C. § 3582(c)(1)(A).  The First Step Act did not, however, amend the two statutorily enumerated grounds for compassionate release, namely (i) the existence of "extraordinary and compelling reasons" supporting a reduction; or (ii) the satisfaction of certain criteria for a defendant sentenced to life imprisonment under 18 U.S.C. § 3559(c), which does not apply in this case.  <u>See id.</u> at §§ 3582(c)(1)(A)(i) & (ii); <u>Riley v. United States</u>, 2020 WL 1819838 at *6-7 (W.D. Wash. Apr. 10, 2020).  In addition, any compassionate release must be consistent with (i) the sentencing factors set

---

[1] The parties agree that defendant has met the prerequisite of exhaustion.

ORDER - 2

forth in 18 U.S.C. § 3553(a), and (ii) the applicable policy statement issued by the United States Sentencing Commission ("Commission"). <u>See</u> 18 U.S.C. § 3582(c)(1)(A).

As adopted in 1984, the statute did not define "extraordinary and compelling reasons," but rather delegated to the United States Sentencing Commission the task of describing the grounds for a sentence reduction that would qualify as "extraordinary and compelling." <u>See</u> 28 U.S.C. § 994(t); <u>see also</u> Pub. L. No. 98-473, §§ 212(a)(2) & 217(a), 98 Stat. 1837, 1998 & 2019 (1984).  The Commission promulgated United States Sentencing Guideline ("USSG") § 1B1.13, the application notes of which describe three categories of potentially "extraordinary and compelling reasons," namely medical condition, age, and family circumstances, <u>see</u> USSG § 1B1.13 cmt. n.1(A)-(C), as well as a "catch-all" provision, <u>id.</u> cmt. n.1(D), which "opens the door" to considering factors other than those specifically enumerated, <u>see</u> <u>United States v. McPherson</u>, 454 F. Supp. 3d 1049 (W.D. Wash. 2020).  The comments to USSG § 1B1.13 do not constrain the Court in evaluating whether the grounds for release articulated by defendant are "extraordinary and compelling," but they do provide helpful guidance. <u>See</u> <u>United States v. Locke</u>, 2020 WL 3101016 at *4 (W.D. Wash. June 11, 2020).

    **1.**     **Obesity**

Defendant relies on an e-mail to his counsel, dated July 30, 2020, in which he states that he weighs 220 pounds, and has a BMI of 30, which places him in the "obese" range.  Exs. A & B to Def.'s Mot. (docket nos. 53-1 & 53-2).  No medical record documents this claim.  In contrast, the Government notes that, as of July 1, 2020, defendant weighed 208 pounds, which makes him "overweight," not "obese." <u>See</u> Exs. B

1 & D to Def.'s Mot. (docket no. 55 at 2)..  Even assuming a recent weight gain to 220

2 pounds, which "flirts with obesity," Def.'s Reply at 4 (docket 65), it would not justify a

3 release at this time.  Defendant's alleged weight gain presents only a slight risk, which

4 remains in large part within his control, and is no different than the weight gain many

5 people have experienced as a result of limitations on their activity during this COVID-19

6 crisis.

7     **2.**    <u>**Latent Tuberculosis**</u>

8     Defendant was diagnosed (via a purified protein derivative ("PPD") test) with a

9 non-symptomatic or latent tuberculosis ("TB") infection, and he refused prophylactic

10 treatment on April 20, 2018, and again on July 1, 2020.  Ex. D to Def.'s Mot. (docket

11 no. 55 at 2, 15)..  Notably, however, defendant requested treatment shortly before filing

12 this motion for release.  Latent TB is controlled with a short course of treatment that is

13 safe and effective.  <u>See</u> https://www.cdc.gov/tb/topic/treatment/ltbi.htm.  This condition

14 is not an extraordinary and compelling reason for release.  <u>United States v. Quintero</u>,

15 2020 WL 3639936 at *3 (N.D. Cal. July 6, 2020).

16     Defendant's reliance on <u>United States v. Atwi</u>, 455 F. Supp. 3d 426 (E.D. Mich.

17 2020), is misplaced.  That decision involved a defendant serving only a four-month

18 sentence who had symptoms of "coughing up blood" and would require a 12-week course

19 of antibiotic treatment for tuberculosis, which exceeded the period remaining on

20 defendant's term of incarceration.  Defendant has not exhibited any TB symptoms, and

21 most courts since <u>Atwi</u> have refused to grant a release for latent TB.  <u>See, e.g.</u>, <u>United</u>

22

23

States v. Heredia, 2020 WL 3971617 at *2 (N.D. Cal. July 14, 2020) (neither latent nor active tuberculosis is a condition placing a person at a heightened COVID-19 risk).

### 3. **Hypertension**

Defendant's medical records do not support his claim of Stage 2 hypertension. On July 1, 2020, his blood pressure was 125/80, *see* Ex. D to Def.'s Mot. (docket no. 55 at 2), which places him below the range for even Stage 1 systolic hypertension, and at the bottom of the range for diastolic hypertension. *See* https://www.cdc.gov/bloodpresure/facts.htm. Moreover, the CDC has identified hypertension as only a "possible," and not an actual, COVID-19 risk factor. Numerous courts have denied release for individuals who suffer from this condition. *See*, *e.g.*, *United States v. Carter*, 2020 WL 4194014 (S.D. Ga. July 21, 2020). Defendant's alleged hypertension does not support his release.

### 4. **Hyperlipidemia**

Defendant's medical records indicate that his hyperlipidemia is well controlled with medication. *See* Ex. D to Def.'s Mot. (docket no. 55 at 1, 7). In December 2019, defendant's triglycerides were 125 mg/dL, (<150 is normal), HDL cholesterol was 59 mg/dL (within the normal range of 40-60), LDL cholesterol was 146 mg/dL (<130 is normal), and cholesterol/HDL ratio was 3.9 (within the normal range of 0-4). *Id.* (docket no. 55 at 19). In August 2020, defendant's blood chemistry results showed him holding fairly steady, with HDL cholesterol at 60 mg/dL and a cholesterol/HDL ratio of 4.1, only slightly higher than normal. Ex. 3 to Gov't Resp. (docket no. 62 at 12). Defendant has offered no basis for believing that his cholesterol levels pose any COVID-19 related risk for him.

ORDER - 5

### 5. **Pre-Diabetes**

Defendant's recent test results indicate a risk of diabetes. Pre-diabetes, however, is not itself a risk factor for COVID-19. Rather, it merely means defendant is at risk of developing the risk factor of diabetes. *See United States v. Hazam,* 2020 WL 3265349 at *2 (C.D. Ill. June 17, 2020).

### 6. **Conditions at FCI Sheridan**

Defendant also relies on the existence of COVID-19 in the BOP system and at FCI Sheridan where he is housed. Although FCI Sheridan had four (4) active COVID-19 cases on September 17, 2020, when the Government filed its response, as of the date of this Order, FCI Sheridan has no inmates who have tested positive for COVID-19. See https://www.bop.gov/coronavirus/ (visited Nov. 18, 2020); *see also* Keller Decl., Exs. 4 & 5 to Gov't Resp. (docket nos. 60-3 & 60-4) (describing the successful efforts at FCI Sheridan to control the novel coronavirus).

### 7. **Combination of Factors**

The various conditions on which defendant relies do not individually or in the aggregate constitute the "extraordinary and compelling reasons" necessary for a compassionate release. Defendant has failed to meet his burden of establishing a basis for a compassionate release. Thus, the Court need not address whether any compassionate release would be consistent with the factors set forth in 18 U.S.C. § 3553(a).

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Defendant's Motion for Compassionate Release, docket no. 53, is DENIED; and

(2) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 18th day of November, 2020.

Thomas S. Zilly
United States District Judge

ORDER - 7